LANDAU, S. J.
*72 *439 Defendant appeals a judgment of conviction for third-degree sexual abuse. ORS 163.415. He advances a number of assignments of error, all but one of which we reject without discussion. We write to address only his contention that the trial court erred in failing to deliver a witness-false-in-part jury instruction. We conclude that, even assuming for the sake of argument that the trial court erred in failing to deliver the instruction, any such error was harmless. We therefore affirm.
At trial, the victim testified that she and defendant knew each other socially. She said that, one evening after chatting outside, they agreed to continue their conversation in defendant's car. She testified that, once in the car, defendant began propositioning her sexually and ultimately exposed himself, grabbed her hand, placed it on his erect penis, and caused her to masturbate him. She said that she was afraid of defendant and did not get out of the car because she knew defendant to carry a firearm.
The victim explained that she later reported the incident to the police. The police report stated that she had told Officer Buck that she did not get out of the car because, "if I ran, a strong muscular black man could catch me." At trial, however, the victim said that, "I did not say it like that. I said a man with his size and structure-his stature, if I was to just lean over, just have this much space and have to hop down, how could he not grab me too. I'm pretty sure he's bigger than me, and he can run faster than me." She said that she did not remember saying anything about defendant being black.
On the basis of the victim's testimony, defendant requested the uniform witness-false-in-part instruction, which provides:
"Sometimes a witness may give incorrect or even inconsistent testimony. This does not necessarily constitute lying on the part of the witness. The witness's testimony may be an honest mistake or confusion. The witness may simply forget matters, or his or her memory of an event may contain honest inconsistencies or contradictions. Also, *440 different witnesses may observe or recount the same event differently.
"However, if you find that a witness has intentionally lied in part of his or her testimony, you may, but are not required to, distrust other portions of that witness's testimony.
"As jurors, you have the sole responsibility to determine which testimony or portions of testimony you will or will not rely on in reaching your verdict."
Defendant argued that, "there's been conflicting testimony that rises to-above just inconsistency. I asked [the victim] if she said the words 'strong black man,' she said, 'no, I did not say that. Those are not my words.' " The trial court declined to deliver the instruction, concluding that defendant had "made an insufficient showing to trigger the giving of that instruction."
During closing argument, defendant repeatedly challenged the victim's credibility. He argued that she "has been known to lie." He noted that, with respect to her report to the police,
"[s]he refused to admit that she had made the statements to the police officer. Her statement that she was sure a big muscular black man could catch her. More changing in stories, more malleable facts. The story sounds like something she made up after the fact to what she had done as an excuse as to why she cheated on her boyfriend."
The jury returned a verdict of guilty.
On appeal, defendant argues that the trial court erred in failing to deliver the requested witness-false-in-part instruction. The state *73 argues that the trial court did not abuse its discretion in failing to deliver the instruction and, in any event, any error in failing to deliver it was harmless. Defendant rejoins that the error was not harmless, because the failure to deliver the instruction "deprived defendant of an argument that [the victim's] falsehoods on the stand rendered her entire testimony not credible."
As we noted at the outset, we need not determine whether the trial court erred in failing to deliver the requested instruction because, even if it did, the error was *441 harmless. We are required to affirm the trial court in spite of error if "there is little likelihood that the error affected the verdict." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). There is, in this case, little likelihood that the failure to deliver the uniform witness-false-in-part instruction affected the verdict, given the nature of the witness-false-in-part instruction itself and the record of the trial.
The uniform witness-false-in-part instruction is derived from ORS 10.095(3), which states that, "on all proper occasions," the jury is to be instructed "[t]hat a witness false in one part of the testimony of the witness may be distrusted in others." The instruction actually "makes no demand on the jury; it simply describes what the jury is empowered to do." State v. Long , 106 Or. App. 389, 395, 807 P.2d 815 (1991), adh'd to as modified on recons , 107 Or. App. 284, 812 P.2d 831 (1991), overruled on other grounds by City of Portland v. Jackson , 111 Or. App. 233, 826 P.2d 37 (1992), rev'd , 316 Or. 143, 850 P.2d 1093 (1993). In that regard, the instruction has long been subject to criticism, given that it not only fails to require anything of the jury but also merely restates common sense and can consist of an improper comment on the evidence. As Wigmore put it:
"It may be said, once for all, that the maxim [false in one, false in all] is in itself worthless; first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words."
John Henry Wigmore, 3 A Treatise on the Anglo-American System of Evidence in Trials at Common Law § 1009, 675 (3d ed. 1940); see also Beavers v. Boykin , 273 Ala. 413, 415, 142 So. 2d 10 (1962) ("The prevailing attitude of the courts toward such instructions is one of tolerance and sufferance. The instructions labor under faint praise and are generally regarded as of little assistance to the juries." (Internal quotation marks omitted.)); Comm v. Parente , 184 Pa. Super 125, 132, 133 A.2d 561 (1957), aff'd , 392 Pa. 48, 139 A.2d 924 (1958) ("The maxim has been limited, qualified, criticized, and, in a sense, rejected by both authors and courts.").
*442 Oregon courts have expressed similar concerns. As this court explained in State v. Walker , 291 Or. App. 188, 193, 419 P.3d 794 (2018), although the Court of Appeals has not expressly said that the witness-false-in-part instruction is disfavored, "it is certainly an instruction to be approached with caution." The Supreme Court likewise has observed that the witness-false-in-part instruction has the potential to lead to "mischief in the jury room," citing Wigmore's criticism. Ireland v. Mitchell , 226 Or. 286, 293, 359 P.2d 894 (1961).
Of particular relevance to this case is the criticism that the instruction does not require anything of the jury; rather, it tells the jury what it is already free to do. Even without the instruction, juries remain free to draw inferences from the credibility or lack of credibility of witnesses. And even without the instruction, parties remain free to make arguments about the point.
That certainly was so in this case. Defendant openly challenged the victim's credibility generally in closing arguments, observing that she "has been known to lie" and that she "made up after the fact" her version of the events at trial. And he specifically targeted the inconsistency between her testimony in court and the report to the police, arguing that she "refused to admit that she had made the statements to the police officer" that a *74 "big muscular black man could catch her." Defendant's argument that the trial court's failure to deliver the instruction deprived him of the argument that the victim's testimony was not credible is simply not borne out by the record.
We conclude that, even assuming that the trial court erred in failing to deliver the requested uniform witness-false-in-part jury instruction, such error was harmless.
Affirmed.